UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
EDWIN MALDONADO,
                Plaintiff,

v.

OFFICER MILLER, et al.,
                Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

21 CV 3719 (VB)

Briccetti, J.:

    Plaintiff Edwin Maldonado, proceeding pro se and in forma pauperis, brings this Section 1983 action against defendants Correction Officers Matthew Miller, Evelyn Diaz, Amanda Saunders, Anthony Wells, Gerard Guiney, Keith Chase, John Serrell, Dennis McGill, Kevin O'Connor, Richard Smith II, Clifford Gunsett, Douglas Hildebrandt, Jason Gwinn, and Daniel F. Mulligan[1]; Sergeant Ralph Rohl; Captain Floyd Norton; Deputy Superintendent Danielle Medbury; and Deputy Superintendent Anthony Russo. Defendants are all current or former employees of the New York State Department of Corrections and Community Supervision ("DOCCS") who worked at Green Haven Correctional Facility ("Green Haven") in Stormville, New York, at all relevant times. Plaintiff alleges these eighteen defendants violated his Fourth and Eighth Amendment rights during a series of events that occurred while he was incarcerated at Green Haven in 2005 and 2018.[2]

---

[1] In the third amended complaint, plaintiff incorrectly sues Officer Daniel F. Mulligan as "John Mulligen." (Doc. #56 ("TAC") at ECF 6). The Court refers to this defendant by his proper name, as set forth in the Fifth Amended Order of Service and plaintiff's prior correspondence with the Court. (See Docs. ##59, 75).

    "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing System.

[2] Defendants argue that to the extent plaintiff brings any state law claims for damages, the Court lacks jurisdiction because such claims must be brought in the New York Court of Claims.

1

Now pending is the Moving Defendants'[3] motion to dismiss the third amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) (Doc. #118), and defendant Saunders's separate motion to dismiss the third amended complaint pursuant to Rules 12(b)(2), 12(b)(5), and 12(b)(6) (Doc. #122).

For the reasons set forth below, the Moving Defendants' motion is GRANTED IN PART and DENIED IN PART, and Saunders's motion is GRANTED.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of ruling on the motions, the Court accepts as true all well-pleaded factual allegations in the third amended complaint, as well as certain factual allegations in plaintiff's opposition.[4] The Court draws all reasonable inferences in plaintiff's favor, as summarized below.

At all relevant times, plaintiff was a sentenced prisoner incarcerated at Green Haven.

---

See N.Y. Correct. Law § 24(2). Plaintiff concedes his state law claims are barred in this action. (Doc. #133 ("Pl. Opp.") at ECF 8). Accordingly, any state law claims for damages must be dismissed.

[3]   The twelve "Moving Defendants" are Miller, Russo, Medbury, Guiney, Serrell, McGill, O'Connor, Smith, Gunsett, Hildebrandt, Gwinn, and Mulligan. (Doc. #118). Defendants Wells, Diaz, Norton, Chase, and Rohl filed an answer to the third amended complaint. (Doc. #120). Accordingly, plaintiff's claims against the non-moving defendants shall proceed.

[4]   Because plaintiff is proceeding pro se, the Court considers new allegations in his opposition, to the extent they are consistent with the third amended complaint. See Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion.").

Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

I.    2005 Events

In January 2005, plaintiff alleges Miller ordered another officer to search plaintiff because plaintiff reminded Miller of someone who had assaulted him.  Miller then allegedly falsified a misbehavior report and threatened to send plaintiff to the H Block housing unit "to be assaulted."  (TAC at ECF 7).  Plaintiff asserts he was in fact moved to H Block at the end of January 2005.

On February 1, 2005, plaintiff alleges defendants Serrell, McGill, and O'Connor assaulted plaintiff in H Block while he was on his way to recreation.  Then, while plaintiff was being moved to the Special Housing Unit ("SHU"), "multiple officers including officer Mulligan," assaulted plaintiff, broke his ribs, and used racial slurs, telling plaintiff "[t]his is for Officer Miller."  (TAC at ECF 7).

On April 12, 2005, plaintiff asserts defendants Gunsett and Smith physically and sexually assaulted plaintiff in the SHU shower.  The following day, plaintiff alleges his food tray contained insects and the water in his cell was cut off.

II.    2018 Events

"[U]pon returning to Green Haven" in 2018, plaintiff alleges he notified defendant Russo, the Deputy Superintendent of Security, and defendant Medbury, the Deputy Superintendent of Mental Health, that he "feared retaliation from officers who assaulted him in 2005."  (TAC at ECF 7).[5]  Plaintiff alleges he "wrote dozens of letters" to Medbury, Russo, and others, stating he feared for his safety because the officers who had attacked him in 2005 still worked at Green Haven in 2018.  (Id.).

---

5    The third amended complaint contains no facts concerning the period between the last alleged events in 2005 and plaintiff's "[r]eturning to Green Haven" in 2018.  (TAC at ECF 7).

3

In May 2018, plaintiff alleges he was sent to the reception area to retrieve his property after spending five days "on the Draft." (TAC at ECF 7). Plaintiff asserts he was threatened by officers at reception, where Gunsett worked.

Plaintiff further alleges defendant Rohl sexually assaulted him on two separate occasions. First, Rohl allegedly asked plaintiff to pull down his pants, and he offered plaintiff drugs in exchange for the encounter. According to plaintiff, defendant Diaz then threatened to file a misbehavior report if plaintiff did not "comply to work with" Rohl or pay for the drugs Rohl gave him. (TAC at ECF 8). Second, Rohl took plaintiff into a closet with another inmate, where both Rohl and the other inmate forcibly touched and sexually assaulted plaintiff. Diaz allegedly witnessed plaintiff return from the assault, after he "had to fight his way out." (Id.).

In May 2018, plaintiff alleges his cell was burnt, and that Rohl told plaintiff "the reason" was plaintiff's rejection of Rohl's sexual advances. (TAC at ECF 8). Rohl then allegedly ordered an inmate to attack plaintiff with a weapon. Plaintiff alleges he was subsequently transferred to another housing block and, when he received his property from reception—where Gunsett worked—"most of it was stolen." (Id. at ECF 9).

In June 2018, plaintiff alleges he was sexually assaulted by defendant Chase, who put his hands down plaintiff's pants during a pat frisk, stating, "Rohl said you'll like this." (TAC at ECF 9).

On June 17, 2018, plaintiff asserts he was placed in the yard with a mentally ill inmate, who attacked him. The responding officers allegedly pepper-sprayed plaintiff, and he was transferred to a different block. Plaintiff alleges his property was then taken back to the reception area to be transferred, and more of it was stolen.

On June 18, 2018, plaintiff was taken to the disciplinary office for a hearing regarding the previous day's inmate attack. There, Rohl allegedly influenced defendant Norton to find plaintiff guilty of disciplinary charges. Plaintiff alleges Norton and Rohl then placed him in a holding cell with the same inmate who had attacked him in the yard the day before. Plaintiff further alleges Norton, Rohl, and Saunders told the inmate to beat plaintiff up and "screamed steel[] cage match." (TAC at ECF 9). After the inmate attacked plaintiff's face, shoulders, back, and neck, Saunders allegedly pepper-sprayed plaintiff. Plaintiff was then taken to the SHU.

According to plaintiff, after he was released from the SHU in August 2018, he saw defendant Medbury and reported the sexual assaults he had experienced. Plaintiff alleges he "ask[ed] what happen[ed] to the transfer she promise[d] plaintiff." (TAC at ECF 9). Medbury allegedly told plaintiff she did not believe he was sexually assaulted and said if plaintiff would "stop snitching . . . maybe the abuse will stop." (Id.).

Plaintiff alleges when he was later transported to another block, defendant Wells sexually assaulted him by putting an object in his anus and stating, "that's for Gunsett and Sergeant Rohl." (Id.). According to plaintiff, Wells threatened to file a misbehavior report if plaintiff reported the assault.

In early 2019, Rohl allegedly had an officer search plaintiff and his cell. Plaintiff was taken to the SHU on allegations he possessed contraband and a weapon.

## DISCUSSION

I.      Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals

5

of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

Moreover, the Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se litigant alleges civil rights violations. Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.    Statute of Limitations

Both the Moving Defendants and Saunders assert certain of plaintiffs' claims are time-barred. The Court addresses each argument in turn.

A.      2005 Claims

The Moving Defendants argue plaintiff's claims against McGill, Miller, Gunsett, Smith, Mulligan, O'Connor, and Serrell are untimely because they concern only the alleged 2005 events.

The Court agrees.

"The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). Plaintiff commenced this action on April 21, 2021, well over a decade after the statute of limitations on his 2005 claims expired. Moreover, plaintiff does not contest that his claims based on the 2005 events are time-barred. (Pl. Opp. at ECF 2). Although plaintiff argues in his opposition brief that he properly stated a claim against Miller because he alleges Miller "ordered officers in H Block to assault plaintiff" (Pl. Opp. at ECF 3), these allegations only pertain to events alleged to have occurred in 2005 (see TAC at ECF 7).

Accordingly, plaintiff's claims against defendants McGill, Miller, Gunsett, Smith, Mulligan, O'Connor, and Serrell must be dismissed.

B.      2018 Claims

Saunders argues plaintiff's claims against her are time-barred because she was not named as a party to the original complaint, and the subsequent amended complaints, all of which were filed after the three-year statute of limitations expired, do not relate back to the original complaint.

The Court agrees.

1.      Legal Standard

In some circumstances, an amended complaint filed outside the statute of limitations may be deemed timely if it relates back to an earlier pleading filed before the limitations period expired. DaCosta v. City of New York, 296 F. Supp. 3d 569, 584 (E.D.N.Y. 2017). An amended complaint adding new or different parties relates back to the original complaint only if the requirements of Federal Rule of Civil Procedure 15(c) are met. Rule 15(c) contains two subsections relevant here.

First, Rule 15(c)(1)(A) provides: "An amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back." Here, New York law—specifically, Section 203 of New York Civil Practice Law and Rules ("Section 203")—governs whether an amended complaint relates back for the purposes of Rule 15(c)(1)(A) when the amended complaint adds a new party not previously named in the original complaint. Section 203 provides: "In an action which is commenced by filing, a claim asserted in the complaint is interposed against the defendant or a co-defendant united in interest with such defendant when the action is commenced." As the New York Court of Appeals has explained, under Section 203, claims added in an amended pleading will relate back to an earlier complaint if three conditions are satisfied:

> (1) both claims arose out of [the] same conduct, transaction or occurrence, (2) the new party is "united in interest" with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.

Buran v. Coupal, 87 N.Y.2d 173, 178 (1995).

Second, Rule 15(c)(1)(C)(ii) provides: "An amendment to a pleading relates back to the date of the original pleading when," among other criteria, "the party to be brought in by

amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Rule 15(c)(1)(C) "applies only where an amendment changes the party or the naming of the party against whom a claim is asserted—not where an amendment adds a previously unmentioned party." Neal v. Wilson, 239 F. Supp. 3d 755, 759 (S.D.N.Y. 2017) (collecting cases). This is because "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake" under Rule 15(c)(1)(C)(ii), even in cases brought by pro se plaintiffs. Hogan v. Fischer, 738 F.3d 509, 518 (2d Cir. 2013).

2. Analysis

Plaintiff's claims against Saunders are based on one alleged incident that took place on June 18, 2018. For Section 1983 actions in New York, the statute of limitations begins to run "from the time a plaintiff knows or has reason to know of the injury giving rise to the claim." Milan v. Wertheimer, 808 F.3d 961, 963 (2d Cir. 2015). As such, the three-year statute of limitations expired on plaintiff's claims against Saunders on June 18, 2021. Plaintiff signed the original complaint on April 21, 2021, within the three-year limitations period. (Doc. #2).[6] However, the original complaint is the only arguably timely-filed pleading with respect to Saunders: the first amended complaint was signed on September 6, 2021 (Doc. #7), the second amended complaint was signed on January 19, 2022 (Doc. #17), and the third amended

---

[6] Under the "prisoner mailbox rule," a document submitted by incarcerated litigants proceeding pro se are deemed filed as of the date it is delivered to prison officials for mailing to the courts. See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001). "In the absence of other evidence as to when the prisoner actually delivered his complaint to prison officials," courts in the Circuit assume "a pro se plaintiff hands his complaint to prison officials for mailing on the date in which he signs it." Lehal v. Central Falls Detention Facility Corp., 2019 WL 1447261, at *19 (S.D.N.Y. Mar. 15, 2019). Accordingly, here, the Court treats the date of signing as the date of filing for each of plaintiff's pleadings.

complaint was signed on June 17, 2022 (Doc. #56).  And the original complaint neither names Saunders as a party nor alleges her involvement in the June 18, 2018, incident.  Thus, plaintiff's claims against Saunders are time-barred unless the first amended complaint—which arguably references Saunders as a "Jane Doe" defendant—relates back to the original complaint under Rule 15(c).

As to the requirements under Rule 15(c)(1)(A), even assuming the claims in the first amended complaint arise out of the same conduct described in the original complaint, Saunders is not "united in interest" with the original defendants, nor did she know or have reason to know the original complaint would have been brought against her but for plaintiff's mistake.  To start, Saunders is not represented by the same counsel as the originally named defendants, and the originally named defendants raise different defenses than Saunders in their motion to dismiss.[7]  See Simmons v. Mason, 2019 WL 4525613, at *9 (S.D.N.Y. Sept. 8, 2019) (explaining the "constructive notice" condition "is based on the theory that the newly added defendant is not prejudiced by the lack of notice if his attorney has already begun preparing a defense for the named defendant during the limitations period").[8]  In addition, "Section 203 has been interpreted to embody essentially the same limitation as Federal Rule 15(c)(1)(C)," namely that a plaintiff's

---

[7] In further support of her argument that she lacked constructive notice of plaintiff's claims, Saunders submitted an affidavit providing additional facts about the timing and duration of her employment at Green Haven.  (Doc. #123-1).  However, this is not a document the Court may consider in deciding a Rule 12(b)(6) motion.  See Rankel v. Town of Somers, 999 F. Supp. 2d 527, 538 (S.D.N.Y. 2014) (distinguishing between Rule 12(b)(6) and 12(b)(5) motions in considering the defendants' declarations).  In addition, the Court need not consider the affidavit in connection with Saunders's Rule 12(b)(5) motion because the Court finds plaintiff's claims against Saunders must be dismissed under Rule 12(b)(6).

[8] Plaintiff will be provided with copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

failure to name a party in the original complaint does not qualify as an "excusable mistake" about that party's identity. Neal v. Wilson, 239 F. Supp. 3d at 761. Thus, the first amended complaint does not relate back to the original complaint under Rule 15(c)(1)(A) because it does not meet the standard of Section 203.[9]

Turning to Rule 15(c)(1)(C), this subsection is inapplicable to the instant case. Rule 15(c)(1)(C) applies only when the amended pleadings change the name of a previously named party, not when a new party is added altogether. See Hogan v. Fischer, 738 F.3d at 517 ("This Circuit has interpreted [Rule 15(c)(1)(C)] to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities."). Saunders was not named at all in the original complaint, and the first amended complaint only references her as "Jane Doe Disciplinary Officer Office June 18, 2018 incident." (Doc. #7 at ECF 2). Therefore, the first amended complaint does not relate back to the original complaint under Rule 15(c)(1)(C) either.

Accordingly, plaintiff's claims against Saunders are untimely and must be dismissed.

III.     Personal Involvement

The Moving Defendants argue the third amended complaint fails to allege any facts detailing the personal involvement of Hildebrandt, Guiney, or Gwinn in any constitutional violation.

---

[9] Another potentially relevant provision of New York law is Section 1024 of New York Civil Practice Law and Rules, which states: "A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known." However, plaintiff "cannot take advantage of this statute because he did not 'proceed against' [Saunders] in any fashion until after the statute of limitations expired." Neal v. Wilson, 239 F. Supp. 3d at 760–61. Plaintiff did not describe Saunders as "Jane Doe," or in any other way as would fairly alert her that she was the intended defendant, until he signed the first amended complaint on September 6, 2021. See id. at 761.

The Court agrees.

To state a claim under Section 1983, a plaintiff must allege facts showing a defendant's direct and personal involvement in the alleged constitutional deprivation.  See Spavone v. N.Y.S. Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013).  Moreover, when "the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."  Perkins v. City of New York, 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017).

Plaintiff does not contest, and the Court finds, that the third amended complaint lacks specific allegations regarding these three defendants.  (Pl. Opp. at ECF 3).  Accordingly, plaintiff's claims against Hildebrandt, Guiney, and Gwinn must be dismissed.

IV.  Failure to State a Claim

The Moving Defendants argue plaintiff fails plausibly to plead Gunsett, Russo, or Medbury violated any of plaintiff's constitutional rights.[10]

The Court agrees with respect to Gunsett and Russo, but disagrees with respect to Medbury.

A.  Defendant Gunsett

The third amended complaint contains the following specific allegations regarding Gunsett:  (i) in 2005, Gunsett sexually assaulted plaintiff; (ii) when plaintiff returned to Green Haven in 2018, he was sent to retrieve his property at the reception area where Gunsett worked and was threatened by other officers; (iii) in 2018, plaintiff was transferred to several different

---

[10]  As discussed above, plaintiff's claims against Miller are untimely as they relate solely to the alleged 2005 events.  (See supra Section II.A).  As such, the Court discusses only the claims against Gunsett, Russo, and Medbury here despite the Moving Defendants' argument that plaintiff also fails to state a claim against Miller.

blocks, and when his property was taken to the reception area for transfer, "most of it was stolen"; and (iv) in August 2018, plaintiff was sexually assaulted by another officer who said "that's for C.O. Gunsett."  (TAC at ECF 7, 9).

As discussed above, all of plaintiff's claims based on alleged events in 2005 are time-barred.  (See supra Section II.A).  As for the 2018 events, plaintiff's allegations implying that Gunsett stole his personal property because he worked in the reception area when his personal property was stolen are insufficient plausibly to plead he was personally involved in any constitutional violation, as required under Section 1983.  See Forrest v. County of Greene, 676 F. Supp. 3d 69, 78 (N.D.N.Y. 2023) ("It is not sufficient to plead that an official was conceivably personally involved.").  Similarly, the allegation that another officer stated "that's for C.O. Gunsett" during an alleged sexual assault is insufficient to show Gunsett was personally involved in bringing about the assault.  See id. (finding no personal involvement when plaintiff failed to allege defendant was present during the incident or ordered the conduct of those directly involved).

Accordingly, all of plaintiff's claims against Gunsett must be dismissed.

B.      Defendants Russo and Medbury

Liberally construed, the third amended complaint asserts an Eighth Amendment failure-to-protect claim against Russo and Medbury.  The Moving Defendants argue plaintiff fails to allege both the objective and subjective prongs of this claim.

The Court agrees that plaintiff fails to state a claim against Russo, but disagrees with respect to plaintiff's allegations about Medbury.

13

1. <u>Legal Standard</u>

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." <u>Hayes v. N.Y.C. Dep't of Corr.</u>, 84 F.3d 614, 620 (2d Cir. 1996) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 831 (1994)). A failure-to-protect claim arises when prison officials act "with deliberate indifference to the safety of the inmate." <u>Id</u>.

Failure-to-protect claims have two prongs: an objective prong and a subjective prong. To plead the objective prong, a plaintiff must plausibly allege the prison official's conduct was sufficiently serious, meaning the conduct "pose[d] an unreasonable risk of serious damage to [the plaintiff's] health." <u>Darnell v. Pineiro</u>, 849 F.3d 17, 30 (2d Cir. 2017).

To plead the subjective prong, a plaintiff must plausibly allege the defendant knew of a substantial risk of serious harm to the inmate and disregarded that harm by failing to take reasonable measures to abate it. <u>Hayes v. N.Y.C. Dep't of Corr.</u>, 84 F.3d at 620. The defendant officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 107 (2d Cir. 2000).

"[A]n inmate's communications about generalized safety concerns or vague concerns of future assault by unknown individuals are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." <u>Anselmo v. Kirkpatrick</u>, 2019 WL 2137469, at *4 (N.D.N.Y. May 16, 2019). Rather, an Eighth Amendment failure-to-protect claim lies when the plaintiff "alleges that he informed corrections officers about a specific fear of assault and [was] then assaulted." <u>Tubbs v. Venettozzi</u>, 2019 WL 2610942, at *5 (N.D.N.Y. June 26, 2019).

2. Analysis

Plaintiff alleges the following with respect to Russo and Medbury: (i) upon plaintiff's return to Green Haven in 2018, plaintiff notified Russo, the Deputy Superintendent of Security, and Medbury, the Deputy Superintendent of Mental Health, that he "feared retaliation from officers who assaulted him in 2005" (TAC at ECF 7); (ii) plaintiff "wrote dozens of letters" to Russo, Medbury, and others, stating he feared for his safety because the officers that had allegedly attacked him in 2005 were still working at Green Haven in 2018 (id.; Pl. Opp. at ECF 5); and (iii) in August 2018, plaintiff verbally told Medbury he had been sexually assaulted by inmates and officers, and she replied saying she did not believe plaintiff was sexually assaulted and that if plaintiff stopped snitching, "maybe the abuse will stop" (Pl. Opp. at ECF 6; TAC at ECF 9). Plaintiff argues Russo and Medbury knew he was at risk and did nothing to protect him, resulting in sexual assaults by Rohl in May 2018, by Chase in June 2018, and by Wells in August 2018. (See Pl. Opp. at ECF 7).

With respect to Russo, plaintiff alleges only that he wrote dozens of letters about his fear of retaliation from officers who assaulted him in 2005. "The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability" under Section 1983. Watson v. McGinnis, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) (collecting cases). Thus, without more, Russo's receipt of plaintiff's letters about his fear of sexual assault is insufficient to state a failure-to-protect claim.[11]  See Mateo v. Fischer, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010).

---

[11] Plaintiff also asserts a claim against Russo for "lack of training officers dealing with mental health inmates." (TAC at ECF 11). Without any additional factual allegations connecting, on the one hand, Russo's alleged failure to train subordinates with, on the other hand, plaintiff's alleged harm, plaintiff fails to state a claim under Section 1983. See Samuels v. Fischer, 168 F. Supp. 3d 625, 639 (S.D.N.Y. 2016) (collecting cases).

15

However, accepting all of plaintiff's allegations as true, as the Court must at this stage, plaintiff has plausibly alleged he faced a serious risk to his safety and Medbury knowingly disregarded that risk by failing to take any measures to reduce it. As to the objective prong, "there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be objectively, sufficiently serious" under the Eighth Amendment. Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997).

As to the subjective prong, plaintiff alleges he wrote dozens of letters to Medbury regarding his fear of sexual assault by those officers who assaulted him in 2005 and still worked at Green Haven in 2018. Plaintiff also specifically alleges that in August 2018, Medbury acknowledged plaintiff's fears but refused to help, stating she did not believe he had been sexually assaulted and that plaintiff should stop snitching to avoid further abuse. In other words, plaintiff alleges Medbury responded to plaintiff's complaint, which constitutes personal involvement in the alleged constitutional violation. See Carter v. Akinyombo, 2022 WL 2307679, at *5 (S.D.N.Y. June 27, 2022). Plaintiff has thus plausibly pleaded Medbury had actual knowledge of a particularized threat to plaintiff's safety—sexual assaults by the same officers that assaulted him in 2005—and Medbury deliberately disregarded that threat by failing to take any measures to abate it. See Stephens v. Venettozzi, 2016 WL 4272376, *2 (S.D.N.Y. Aug. 5, 2016) (finding plaintiff plausibly alleged a particularized threat by identifying a specific subset of officers).

Defendants argue Medbury had no reason to believe plaintiff's fears of sexual assault were plausible because they were "based only on a thirteen-years-stale prior incident." (Doc. #138 at 6). However, plaintiff alleges that in August 2018, he spoke with Medbury and told her of the more recent sexual assaults by Rohl in particular. (Pl. Opp. at ECF 6–7). Drawing all

16

inferences in plaintiff's favor, he reported both the alleged 2005 and 2018 assaults to Medbury, and Medbury explicitly declined to take any measures to reduce this serious risk to plaintiff's safety. Although an officer's failure to act on "stale or vague threats" is not actionable under the Eighth Amendment, the 2018 sexual assaults plaintiff allegedly reported to Medbury were not stale. Cf. Edwards v. Black, 854 F. App'x 382, 384 (2d Cir. 2021) (summary order). Rather, plaintiff's report of the 2018 sexual assaults reinforced the existence of a present threat to his safety.

Accordingly, plaintiff's failure-to-protect claim against Medbury may proceed, but plaintiff's failure-to-protect claim against Russo must be dismissed.

### C. Qualified Immunity

The Moving Defendants argue that even if plaintiff has plausibly alleged Medbury violated plaintiff's constitutional rights, she is entitled to qualified immunity.

The Court disagrees.

Qualified immunity shields government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad and protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996). "Defendants bear the burden of establishing qualified immunity." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

"[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6)

motion." Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order).  At this stage, for qualified immunity to attach, it must "be established based solely on facts appearing on the face of the complaint."  Barnett v. Mount Vernon Police Dep't, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order).  For this reason, defendants asserting qualified immunity on a motion to dismiss face "a formidable hurdle" and are "usually not successful."  Id.

Here, the Moving Defendants argue Medbury is entitled to qualified immunity because plaintiff fails to allege his clearly established constitutional rights were violated, and even if plaintiff has alleged such a violation, Medbury did not violate any clearly established law of which a reasonable officer would have been aware at the time.  First, as explained above, plaintiff plausibly alleged Medbury failed to protect him against a substantial risk of harm in violation of plaintiff's well-established Eighth Amendment rights.  Second, whether a reasonable officer would have understood Medbury's conduct to be lawful under existing law at the time is a fact-intensive question inappropriate for determination based on the face of the third amended complaint.  Although the Moving Defendants characterize plaintiff's fear of attack as "seemingly outlandish" (Doc. #119 at 13), the Court must draw all reasonable inferences from the facts alleged in plaintiff's favor—"not only those that support his claim, but also those that defeat the immunity defense," McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004), abrogated in part on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544.

Accordingly, Medbury is not entitled to qualified immunity at this early stage of the case, and plaintiff's claim against her may proceed.

## CONCLUSION

The Moving Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

Defendant Saunders's motion to dismiss is GRANTED.

Plaintiff's failure-to-protect claim against defendant Medbury shall proceed, as well as plaintiff's claims against defendants Wells, Diaz, Norton, Chase, and Rohl. All other claims are dismissed.

By September 18, 2024, defendant Medbury shall file an answer to the third amended complaint.

The Clerk is further instructed to terminate defendants Miller, Guiney, Serrell, McGill, O'Connor, Smith, Gunsett, Hildebrandt, Gwinn, Mulligan, Russo, and Saunders on the docket.

By separate Order, the Court will schedule an initial conference.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. Cf. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motions. (Docs. ##118, 122).

Chambers will mail a copy of this Opinion and Order and all unpublished decisions cited herein to plaintiff at the address on the docket.

Dated:  September 4, 2024
        White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge